UNITED STATES

v.

William T. WILLIS, Fireman, U. S. Coast Guard.

CGCMS 23456.
Docket No. 819.

U. S. Coast Guard Court of Military Review.

9 July 1979.

Trial Counsel: LCDR Richard L. Maguire, USCG.

Defense Counsel: LT John M. Griesbaum, USCGR.

Appellate Defense Counsel: LT Robert R. Meeks, USCG.

Appellate Government Counsel: LCDR Larry F. Wheatley, USCG.

## OPINION

MORGAN, Chief Judge:

Fireman William T. Willis, U.S. Coast Guard, was tried by a special court-martial military judge alone on 20 July 1978. He pleaded guilty to and was convicted of a single charge and specification alleging unauthorized absence from 1 May 1978 until 21 June 1978 in violation of Article 86,

Uniform Code of Military Justice, 10 U.S.C. § 886. The military judge received evidence of one prior conviction of the accused by special court-martial and sentenced him to be confined at hard labor for two months, to forfeit $256.00 per month for two months, to be reduced to pay grade E–1 and to be discharged from the Coast Guard with a bad conduct discharge. The judge added a strong recommendation that upon the convening authority taking action on the BCD, any remaining confinement be suspended.

The convening authority approved the sentence as adjudged noting that the military judge's recommendation for suspension of the remaining confinement was "disregarded". The officer exercising general court-martial jurisdiction approved the sentence but suspended the confinement at hard labor for six months with provision for automatic remission.

Appellate defense counsel has raised for the first time the question of whether the accused was subject to court-martial jurisdiction. The issue is based on tenuous grounds consisting of an assertion by the accused in extenuation and mitigation that his recruiter's guarantee that he would be sent to DC School at Governor's Island, New York, fell through as soon as he completed recruit training and information in the accused's enlistment contract, Prosecution Exhibit 3. This document shows the accused's date of birth to be 15 July 1957 and his enlistment date as 9 June 1975. There is no affirmative showing that he enlisted with parental consent. The enlistment contract also shows that the oath of enlistment was administered by a Chief Machinery Technician Kinney in his capacity as Officer-in-Charge of a Coast Guard recruiting station.

The accused's testimony regarding the guaranteed school program falling through following recruit training does not support a conclusion that his enlistment was procured through false promises or even the conclusion that he was denied the opportunity to attend class A school through any fault of the Coast Guard. Indeed his testi-

mony in context is equally susceptible of the interpretation that he did not go to DC School due to the death of his father necessitating his taking ten days emergency leave at the completion of recruit training. He said that he talked with a couple of Chiefs and the Senior Enlisted Advisor about his promised school program and was told that he could have taken a billet of the following company but that fell through. This statement was followed immediately by the statement that his father died at the completion of recruit training and that he had to take ten days emergency leave to return home and try to settle some of the estate. Thus there is no evidence before the Court that the recruiter made any misrepresentations to the accused, that the accused was improperly deprived of the right or privilege of attending DC School or that he has at any time asserted that his enlistment was fraudulently procured. See *U. S. v. Whipple*, 4 M.J. 773 (C.G.C.M.R.1978).

 Similarly, any claim that Fireman Willis' enlistment is invalid due to his lack of age or because the oath of enlistment was not properly administered is without merit. The minimum age for enlistment in the Coast Guard is 17. A person under 18 may only be enlisted with the written consent of his parent or guardian. 10 U.S.C. § 505. The rule for service between the seventeenth and eighteenth birthdays without parental consent is that such service is not void but merely voidable at the option of the non-consenting parent under appropriate circumstances. *U. S. v. Bean*, 13 U.S.C.M.A. 203, 32 C.M.R. 203 (1962). See also *U. S. v. Graham*, 22 U.S.C.M.A. 75, 46 C.M.R. 75 (1972). Not only is there no indication that the accused's parent or guardian sought his release from the Coast Guard but there is also no indication that Fireman Willis himself sought release from the Coast Guard due to the invalidity of his enlistment either before the instant court-martial or before his prior trial by special court-martial on 20 October 1977. See *U. S. v. Harrison*, 5 M.J. 476 (C.M.A.1978).

 Section 502 of Title 10, United States Code prescribes the oath of enlist-ment which shall be taken by each person enlisting in the Armed Forces and provides that the oath or affirmation "may be taken before any commissioned officer of any armed force". (underscoring added) Article 136 Uniform Code of Military Justice, 10 U.S.C. § 936, enumerates various armed forces personnel who may administer oaths and have the general powers of a notary public. It provides specifically:

"(b) The following persons on active duty may administer oaths necessary in the performance of their duties:

\* \* \* \* \* \*

(5) All recruiting officers.

(6) All other persons designated by regulations of the armed forces or by statute".

Article 7-1-8 D of United States Coast Guard Regulations CG-300 dated 7 February 1975 provides in part:

"Any \* \* \* chief petty officer or first class petty officer who is an officer in charge of a recruiting station and is authorized by the district commander may administer the oath of enlistment for the Coast Guard."

This designation is authorized by either Article 136(b)(5) or (6) UCMJ. Those statutory provisions were left unchanged when the Congress last amended Article 136, 24 October 1968. Pub.L. 90-632, § 2(34), 82 Stat. 1343. Had they presented any conflict with the enlistment oath provisions of 10 U.S.C. 502 the Congress certainly would have reconciled the conflict. See *U. S. v. Kick*, 7 M.J. 82 (C.M.A.1979). There is no affirmative evidence of record that Chief Machinist Technician Kinney had been authorized by the district commander to administer the oath of enlistment but there is likewise no evidence before the Court that he had not been so authorized. In the absence of evidence to the contrary, it will be presumed that Chief Kinney was duly authorized to administer the oath of enlistment in the performance of his duties. See *U. S. v. Masusock*, 1 U.S.C.M.A. 32, 1 C.M.R. 32 (1951); *U. S. v. Andrews*, 1 C.M.R. 162 (A.B.R.1951) petition for review by USCMA denied 1 U.S.C.M.A. 700, 1 C.M.R. 98.

It is also asserted for the first time on appeal that the specification does not state an offense. The specification alleges:

"In that Fireman William T. Willis, U.S. Coast Guard, USCGC White Sumac, did, at or about 0745, 1 May 1978, without authority, absent himself from his unit, to wit: USCGC White Sumac, located at Thunderbolt, Georgia, and did remain so absent until at or about 21 June 1978."

Relying on Article 86(3), UCMJ, and *U. S. v. Kohlman*, 21 C.M.R. 793 (A.F.B.R.1956) appellate defense counsel contends that a specification alleging absence from unit, organization or place of duty is insufficient unless it contains the words "at which he was required to be". The specification under consideration in *U. S. v. Kohlman* alleged pertinently that the accused without proper authority absented himself from " * * * the Base Retraining Flight, 806th Air Base Group, located at Lake Charles Air Force Base, Louisiana" for a specified period on 18 September 1955. The Air Force Board of Review held that the specification failed to allege the offense of unauthorized absence since it did not contain language characterizing the Base Retraining Flight as Airman Kohlman's unit, organization, or place of duty at which he was required to be.

■ The specification in the case at bar follows substantially sample specification form 14 of Appendix 6c, Manual for Courts-Martial 1969 (Rev.). It asserts that the absence was without authority, that it was from his (Willis') unit, namely USCGC White Sumac, that the unit was located at Thunderbolt, Georgia, and that the absence was for a specified period. Clearly these allegations encompass all the elements of the offense of unauthorized absence from a unit in violation of Article 86, UCMJ. See *U. S. v. Mitchell*, 21 C.M.R. 820 (A.F.B.R. 1956) Reversed, *U. S. v. Mitchell*, 7 U.S.C. M.A. 238, 22 C.M.R. 28 (1956); *U. S. v. Posnick*, 8 U.S.C.M.A. 201, 24 C.M.R. 11 (1957); *U. S. v. Price*, 1 M.J. 552 (A.F.C.M. R.1975); *U. S. v. Sell*, 3 U.S.C.M.A. 202, 11 C.M.R. 202 (1953); *U. S. v. Fout*, 3 U.S.C. M.A. 565, 13 C.M.R. 121 (1953).

Under questioning by his counsel during extenuation and mitigation Fireman Willis testified that he would prefer a bad conduct discharge to any confinement and thought a bad conduct discharge would be best for him and for the good of the service. The accused testified that his counsel had advised him of the effects of a bad conduct discharge. He then identified Defense Exhibit A as his personal request for a bad conduct discharge. This writing was addressed to the military judge from Fireman Willis and requested that the military judge "award me a bad conduct discharge". The statement went on to relate that his defense counsel had strongly urged that he not take that course of action but that he was disregarding his counsel's advice and was demanding that his counsel argue for a bad conduct discharge on his behalf. It also identified three witnesses, including the executive officer of White Sumac, who were willing to testify favorably for the accused in extenuation and mitigation but stated the accused's demand that they not be called. Defense counsel reiterated on the record that he had strongly advised Fireman Willis not to ask the court for a bad conduct discharge but that his advice had been disregarded. Defense counsel did argue for a sentence to a bad conduct discharge only.

Appellate defense counsel concedes the right of an accused to seek a sentence to bad conduct discharge as well as the right of his counsel to assist him in that pursuit. *U. S. v. Weatherford*, 19 U.S.C.M.A. 424, 42 C.M.R. 26 (1970). He argues, however, that Fireman Willis was denied effective assistance of counsel because trial defense counsel was unable to accept the accused's decision and emphasized to the trial judge that the accused was acting contrary to his counsel's advice.

In *U. S. v. Blunk*, 17 U.S.C.M.A. 158, 37 C.M.R. 422 (1967) trial defense counsel told the members that the accused did not desire to present anything in extenuation and mitigation despite counsel's advice to the contrary. Counsel also attached to the record a statement of Blunk expressing his desire

to seek a bad conduct discharge contrary to the advice of his counsel. This statement was not presented to the court members who adjudged a sentence including a bad conduct discharge. A board of review found that Blunk had been prejudiced by his counsel's action in spreading upon the record the fact that the accused's refusal to allow the presentation of matters in extenuation and mitigation was contrary to his counsel's advice.

Considering the case on certification the Court of Military Appeals found no prejudice to the accused and reversed. The Court said that if an accused instructs his counsel to present nothing in extenuation or mitigation the attorney is bound to comply with that instruction or withdraw from the case although he should exert every effort to sway his client's judgment.

It was error for counsel to inform the court that Blunk's actions were contrary to his counsel's advice but there was no prejudice since the accused received the very sentence he had sought and he had not at any stage disavowed the statements of his counsel. Cf. *U. S. v. Allen*, 8 U.S.C.M.A. 504, 25 C.M.R. 8 (1957); *U. S. v. Friborg*, 8 U.S.C.M.A. 515, 25 C.M.R. 19 (1957); *U. S. v. Larneard*, 3 M.J. 76 (C.M.A.1977); *U. S. v. Rivas*, 3 M.J. 282 (C.M.A.1977).

Applying the principles of *U. S. v. Blunk, supra*, it was error for trial defense counsel to inform the trial judge that Fireman Willis' request for a bad conduct discharge was contrary to the advice of his counsel. But the possibility of prejudice to the accused was less likely than in Blunk. The accused was tried by judge alone and there is a general presumption that a trial judge is capable of disregarding information which might have an improper impact on lay court members. See *U. S. v. Villa*, 19 U.S.C.M.A. 564, 42 C.M.R. 166 (1970); *U. S. v. Green*, 1 M.J. 453 (C.M.A.1976); *U. S. v. Wood*, 23 U.S.C.M.A. 57, 48 C.M.R. 528 (1974). Indeed the absence of prejudice to the accused is manifest. Not only has he failed to complain but in a further statement attached to the record of trial defense counsel has stated that prior to the supervisory authority's action on the record he had a telephone conference with Fireman Willis during which he informed the accused of his desire to approach the officer exercising general court-martial jurisdiction to seek suspension of the bad conduct discharge. Again the accused insisted upon his desire to leave the Coast Guard with a bad conduct discharge and instructed counsel not to request clemency from the supervisory authority.

Finally appellate defense counsel asserts that the sentence to a bad conduct discharge is inappropriate. The unauthorized absence from 1 May 1978 until 21 June 1978 for which the accused was convicted standing alone might leave the propriety of a bad conduct discharge subject to question. But the government presented proper evidence of a prior conviction of the accused by special court-martial for unauthorized absences from 21 March 1977 until 11 May 1977 and from 11 May 1977 until 22 September 1977 and for escaping from custody on 11 May 1977. Considering Fireman Willis' record now before us together with his adamant insistence upon his desire to leave the Coast Guard with a bad conduct discharge the sentence is entirely appropriate. See paragraph 76a(4) MCM 1969 (Rev.); *U. S. v. Blakely*, 49 C.M.R. 875 (C.G.C.M.R. 1975); *U. S. v. Riley*, 1 M.J. 639 (C.G.C.M.R. 1975); *U. S. v. Rasmussen*, 4 M.J. 513 (C.G. C.M.R.1977); *U. S. v. Weatherford, supra*.

The findings of guilty and the sentence as approved on review below are affirmed.

Judges BURGESS, HOLLAND and BRIDGMAN concur.

Judge ALCANTARA did not participate in the decision of this case.